UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAULINO VALENZUELA,

                        Petitioner,                    No. 19-CV-3696 (KMK)

     v.                                            No. 20-CV-3077 (KMK)

WILLIAM F. KEYSER, *Superintendent of*               ORDER
*the Sullivan Correctional Facility*,

                        Respondent.

KENNETH M. KARAS, United States District Judge:

     Pro se Petitioner Paulino Valenzuela ("Petitioner"), an inmate at Sullivan Correctional Facility ("Sullivan"), filed an "[E]mergency [P]etition for [W]rit [of Habeas Corpus]" (the "Emergency Petition"), pursuant to 28 U.S.C. § 2254, on April 23, 2020, seeking release from prison based on the conditions of his confinement during the COVID-19 pandemic. *See* Emergency Pet. For Writ of Habeas Corpus ("Emergency Pet.") (Dkt. No. 18).)[1] For the reasons that follow, the Emergency Petition is denied.

## I.  Factual Background

     Following a jury trial, Petitioner was convicted in the Supreme Court of the State of New York, Bronx County, of murder in the second degree, attempted murder in the second degree, assault in the first degree, and two counts of criminal possession of a weapon in the second degree.  (*See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("2019 Pet.") 2–3 (Dkt. No. 2).)  *See also People v. Valenzuela*, 47 N.Y.S.3d 249, 250–51 (App. Div. 2017), *leave to appeal denied*, 80 N.E.3d 416 (N.Y. 2017), *reconsideration*

---

[1] All citations in this Order are to docket number 19-CV-3696, unless noted otherwise.

*denied*, 93 N.E.3d 1220 (N.Y. 2017).  On May 5, 2011, Petitioner was sentenced to an aggregate term of 90 years to life imprisonment.  (2019 Pet. 2–3.)  *See also Valenzuela*, 47 N.Y.S.3d at 250–51.  On January 26, 2017, the Appellate Division of the First Department directed that Petitioner's sentence for criminal possession of a weapon in the second degree be served concurrently with the other sentences, resulting in a new aggregate term of 75 years to life imprisonment.  *See id.* at 251.  Petitioner is currently serving his sentence at Sullivan, and his earliest release date is July 3, 2075.  (Decl. of David A. Slott, Esq. in Opp'n to Emergency Pet. ("Slott Decl.") ¶ 4 (citing Department of Corrections and Community Supervision ("DOCCS") Inmate Lookup, DIN 11-A-2129, available at http://nysdoccslookup.doccs.ny.gov/ (last accessed June 29, 2020)) (Dkt. No. 24).)

According to Petitioner, on April 3 and 4, 2020, at least one "[c]orrectional [o]fficial staff member" was sent home after performing a double shift at Sullivan, due to a high fever and other symptoms of COVID-19.  (Emergency Pet. 1.)[2, 3]  Inmates were exposed to this staff member during his shifts.  (*Id.*)  Petitioner also claims that DOCCS has hired approximately 20 additional correctional officers who are not physically examined for COVID-19 symptoms when they enter Sullivan, and instead must only fill out a symptoms and exposure questionnaire, on which some of them have lied.  (*Id.* at 2.)  More generally, Petitioner alleges that DOCCS has failed to follow COVID-19 guidelines from the Centers for Disease Control and Prevention (the "CDC").  (*Id.* at 1.)  For example, DOCCS allegedly has not obtained "COVID-19 test sample collection kits,"

---

[2] Because the pages of the Emergency Petition are unnumbered, the Court refers to the ECF-stamped numbers at the top of each page.

[3] It is unclear whether Petitioner alleges that one or two staff members were sent home from Sullivan after exhibiting symptoms of COVID-19.  (*See* Emergency Pet. 1 ("[On] April 3, 4, 2020 . . . a two [sic] Correctional Official staff member was removed from his post and sent home d[ue] to his fever and COVID-19 symptom[s] . . . .").)

inmates must bathe in the same shower that is not cleaned after each use and sit next to each other when they eat without being able to distance their chairs, and phones are being used with high frequency. (*Id.* at 1–2.) According to a "confidential informing party (an [o]fficer)," Sullivan is refusing to allow doctors and nurses to enter the facility and has "locked out" "officers . . .[,] [t]eachers[,] and a [n]urse . . . due to [the] []COVID-19[] infection." (*Id.* at 2.)[4] Petitioner claims that as of June 7, 2020, Sullivan has become an "active hot spot," as it has reported 22 cases of COVID-19 among inmates, which Petitioner alleges is the result of insufficient testing. (Pet'r's Reply Mem. in Further Supp. of Emergency Pet. ("Pet'r's Reply Mem.") ¶ 2 (Dkt. No. 31).)

According to Petitioner, were he to contract COVID-19, he would be at a higher risk of serious illness or death, as he is 57 years old and a "long[-]time documented . . . []colon cancer[] patient" with a "compromised immune system." (*Id.* at 2–3.)[5] Petitioner seeks an "emergency release[]" from the Court. (*Id.* at 3.)

## II.  Procedural Background

On April 25, 2019, Petitioner filed a Petition for a Writ of Habeas Corpus (the "2019 Petition"). (*See generally* 2019 Pet.) On the same day, Petitioner filed a request to proceed in forma pauperis, (Dkt. No. 1), which the Court granted on June 10, 2019, (Dkt. No. 3). The 2019 Petition was referred to the Honorable Judith C. McCarthy ("Judge McCarthy") on June 18, 2019. (Dkt. No. 5.) After receiving two extensions from Judge McCarthy, (Dkt. Nos. 10, 12),

---

[4] Moreover, Petitioner alleges that he has learned from this "confidential informing party" that "there are officer[s] [who] are using masks and gloves." (Emergency Pet. 2.) It is unclear to the Court whether Petitioner intends to allege that these officers are *not* using masks and gloves.

[5] According to a January 24, 2020 letter from Dr. Neil R. Volk, attached to the Emergency Petition, during a recent colonoscopy, Petitioner had "benign hyperplastic polyps" removed that "carr[ied] no increased risk of cancer." (Emergency Pet. 5.)

Respondent filed an Opposition to the 2019 Petition on December 18, 2019, (Dkt. Nos. 13–15). On January 31, 2020, Petitioner filed a Reply.  (Dkt. No. 17.)  The 2019 Petition remains pending.  (*See generally* Dkt.)  On April 23, 2020, Petitioner filed the instant Emergency Petition.  (Emergency Pet.)  After receiving an extension from the Court, (Dkt. No. 22), Respondent filed an Opposition to the Emergency Petition on May 6, 2020, (Slott Decl.; Resp't's Mem. of Law in Opp'n to Emergency Pet. ("Resp't's Mem.") (Dkt. No. 25)).  Pursuant to an Order from the Court, (Dkt. No. 28), Petitioner filed a Reply on June 18, 2020, (Pet'r's Reply Mem.).

### III.  Discussion

At the outset, the Court notes that Petitioner's 2019 Petition remains pending.  "The Second Circuit has made abundantly clear that where a [p]etitioner files a second petition for a writ of habeas corpus before his first habeas petition has reached a final disposition, the second petition should be treated as a motion to amend the initial petition." *Stewart v. State of N.Y. Dep't of Corrs.*, No. 20-CV-2136, 2020 WL 3415768, at *1–2 (E.D.N.Y. June 22, 2020) (citation and quotation marks omitted) (ultimately citing *Ching v. United States*, 298 F.3d 174, 175 (2d Cir. 2002)).  District courts in the Second Circuit have recently applied this standard to cases such as this one, where a petitioner files a pandemic-related emergency motion for a writ of habeas corpus while an original petition is pending.  *See id.*; *Brady v. Wolcott*, Nos. 20-CV-580, 19-CV-1280, 2020 WL 3270378, at *5 (W.D.N.Y. June 17, 2020); *Williams v. Reiser*, No. 17-CV-1040, 2020 WL 3097181, at *2 (W.D.N.Y. June 11, 2020).  Accordingly, the Court construes the Emergency Petition as a motion to amend the 2019 Petition.

Respondent argues that the Emergency Petition should be denied because (1) state prisoners must challenge the conditions of their confinement under 42 U.S.C. § 1983 and not 28

4

U.S.C. § 2254; (2) Petitioner has not exhausted available state court remedies; (3) Petitioner cannot establish an Eighth Amendment violation based on the conditions of his confinement; and (4) even if Petitioner has established a constitutional violation, he has not met the requirements for a "prisoner release order" under the Prison Litigation Reform Act of 1996 ("PLRA"). (Resp't's Mem. 6–22.) The Court agrees that Petitioner has failed to exhaust available state court remedies, and as such, amendment of the 2019 Petition to include the claims in the Emergency Petition would be futile. *See Williams*, 2020 WL 3097181, at *2 (noting that a court "may properly deny leave [to amend] when amendment would be futile," such as when the "proposed claims are unexhausted and the proposed amended pleading would be subject to immediate dismissal" (alteration and quotation marks omitted) (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999)); *see also Stewart*, 2020 WL 3415768, at *2–4 (denying leave to amend a habeas petition to include pandemic-related claims as futile when the petitioner failed to exhaust available state remedies); *Brady*, 2020 WL 3270378, at *5–6 (same).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citations and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (citations

5

and quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.,* 191 F.3d 188, 191 (2d Cir. 1999) (citation omitted). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981) (citations omitted), *overruled on other grounds by Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and the state courts are "apprised of both the factual and the legal premises of the claim [the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original) (citation and quotation marks omitted). In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement. *Daye*, 696 F.2d at 194. However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted).

Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (citation and quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282 (citation omitted); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citation omitted). If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3 (S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012). For example, in New York, a defendant may challenge the conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); s*ee also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he

7

may collaterally attack his conviction by bringing a claim under CPL § 440.10." (citations omitted)), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

Pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (citation and italics omitted)). Thus, because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

Here, Respondent contacted an employee of the Clerk's Office for New York Supreme Court, Sullivan County, who was unable to locate any pending matters involving Petitioner. (Slott Decl. ¶ 7.) Further, Petitioner has not provided any evidence that he exhausted his claims in state court, contending only that "even[] if . . . state remedies were available to Petitioner to seek the relief sought, here, it is undisputed that Respondent perceived facts from which [it could] infer substantial risk." (Pet'r's Reply Mem. ¶ 6; *see also id.* ¶ 4 ("Since the start . . . of the COVID-19 pandemic, federal courts [are] split on the issue of whether a[] [failure to] exhaust all available state court remedies [is necessary] before filing a § 2254 petition[]. . . . [T]he failure to exhaust does not divest this Court of jurisdiction over this [P]etition." (citations omitted)). However, contrary to Petitioner's assertions, numerous courts have denied or dismissed similar pandemic-related petitions under § 2254 for a failure to exhaust state court remedies, including the court in *Pittman v. Cook*, No. 20-CV-626, 2020 WL 2840256 (D. Conn. June 1, 2020), a case cited by Petitioner in support of his argument. *Id.* at *1, *7 (dismissing a federal habeas petition seeking release from prison due to COVID-19 because the petitioner failed to exhaust state court remedies); *see also Cobb v. Wolcott*, No. 20-CV-496, 2020 WL 3470166, at *1, *3–4 (W.D.N.Y.

8

June 25, 2020) (same); *Brooks v. Wolcott*, No. 20-CV-516, 2020 WL 3103795, at *5 (W.D.N.Y. June 11, 2020) (same); *Llewellyn v. Wolcott*, No. 20-CV-498, 2020 WL 3103895, at *4 (W.D.N.Y. June 11, 2020) (same); *Griffin v. Cook*, No. 20-CV-589, 2020 WL 2735886, at *1, *5 (D. Conn. May 26, 2020) (same); *Elleby v. Smith*, No. 20-CV-2935, 2020 WL 2611921, at *1, *4–5 (S.D.N.Y. May 22, 2020) (same).

Nor may Petitioner be excused from exhausting his claims. A federal court may grant a petitioner's unexhausted petition for habeas relief if: (1) "there is an absence of available State corrective process"; or (2) "circumstances exist that render [the State corrective process] ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)–(ii). In other words, exhaustion is not required "[w]here there is no further state proceeding for petitioner to pursue," or "where further pursuit would be futile." *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (citations omitted).

Neither of these exceptions applies to Petitioner. First, state court collateral review proceedings are available to Petitioner, as "his COVID-19-related claims are not based on the trial record and thus did not have to be raised on direct review." *Elleby*, 2020 WL 2611921, at *4. Indeed, according to a state court administrative order submitted by Respondent, "emergency applications related to the coronavirus" have been considered "essential proceedings" since at least March 22, 2020. (Slott Decl. Ex. A ("Administrative Order") (Dkt. No. 24-1).) Further, Petitioner has not otherwise demonstrated that pursuit of his claims in state courts would be futile. *See Brady*, 2020 WL 3270378, at *7 (finding that a conclusory allegation that state courts were unavailable to the petitioner was insufficient to demonstrate that pursuing a request for relief in state court would be futile). Conversely, "[c]ourts across New York State have considered, and resolved, claims and petitions seeking release from state custody in

connection with the COVID-19 pandemic." *Cobb*, 2020 WL 3470166, at *3 (collecting cases). As such, Petitioner is "free to bring a petition for a writ of habeas corpus in the New York State Supreme Court . . . on the ground that the conditions of his[] confinement are unlawful." *Bergamaschi v. Cuomo*, No. 20-CV-2817, 2020 WL 1910754, at *4 (S.D.N.Y. Apr. 20, 2020) (further noting that "many [such petitions have been] granted by justices of the New York State Supreme Court" (record citation omitted)).

Thus, the Court denies the Emergency Petition, and any request to amend the 2019 Petition to include such claims, without prejudice. Allowing New York State courts to first evaluate Petitioner's claims and develop a "full factual record" will be particularly valuable here, "given the rapidly changing conditions in prisons and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic, in general and as specifically affecting [Petitioner's] conditions of confinement." *Elleby*, 2020 WL 2611921, at *5.[6]

---

[6] Because Petitioner has failed to exhaust available state court remedies, the Court need not address the additional arguments raised by Respondent. However, with respect to Respondent's argument that state prisoners must challenge the conditions of their confinement under 42 U.S.C. § 1983 and not 28 U.S.C. § 2254, the Court directs Respondent to Judge Engelmayer's opinion in *Elleby*, 2020 WL 2611921, and the detailed analysis of this argument therein. *See id.* at *2–3 (noting that "[d]istrict courts around the country addressing § 2254 petitions" related to conditions of confinement based on risk of exposure to COVID-19 "have split on whether these claims are properly raised only in a § 1983 suit," and ultimately determining that it is an "unresolved legal question" (collecting cases)).

IV. Conclusion

For the foregoing reasons, the Emergency Petition is denied without prejudice, and the separate Action pertaining to the Emergency Petition is dismissed without prejudice. The Clerk of Court is respectfully directed to mail a copy of this Order to Petitioner and to close Case No. 20-CV-3077.

SO ORDERED.

DATED:    July 8, 2020
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11